UNITED STATES of America, Plaintiff–Appellee,

v.

Edmond Vernon JONES, Jr., Defendant–Appellant.

No. 90–6275.

United States Court of Appeals, Tenth Circuit.

May 7, 1991.

Robert G. McCampbell, Asst. U.S. Atty. (Timothy D. Leonard, U.S. Atty., with him on the brief), Oklahoma City, Okl., for plaintiff-appellee.

Jack Fisher, Edmond, Okl., for defendant-appellant.

Before BRORBY and EBEL, Circuit Judges, and KANE, Senior District Judge *.

KANE, Senior District Judge.

Edmond Vernon Jones appeals his convictions under a two-count indictment. In Count I, Jones was convicted under 18 U.S.C. § 1001 for making false statements to the FBI regarding his ownership of a gun. In Count II, he was convicted under 18 U.S.C. § 1623(a) for making false statements of the same nature to a grand jury. Jones raises four issues in this appeal: (1) whether there was sufficient independent evidence to corroborate his admission that he lied to FBI agents and the grand jury: (2) whether statements he made during a search of his residence should have been suppressed because he was not advised of his rights under *Miranda v. Arizona;* (3) whether he was denied a fair trial when the judge commented that he would not necessarily be incarcerated if convicted; and (4) whether the court erred as a matter of law by not submitting the issue of the materiality of his false statements to the jury. We affirm.

On August 14, 1989, in connection with an investigation of loan fraud at the Shannon Financial Corporation, FBI Special Agent Garland Slate interviewed Jones at his residence. Jones was at that time living with La Denna Dunning, a suspect in the loan fraud case. FBI agents had information that Dunning had threatened to shoot and kill any witness who testified

---

* Honorable John L. Kane, Jr., Senior United States District Judge for the District of Colorado, sitting by designation.

against her mother, Kay Kelley, also a suspect in the case. FBI agents questioned Jones as to Ms. Dunning's access to firearms. During the interview, Jones stated that he sold his gun for $20.00 in November, 1988 to a person named Al.

On August 23, 1989, Jones was subpoenaed and appeared before a grand jury. Jones was asked again about his ownership of any firearms. Jones testified that he owned a rifle three months earlier, which he lost in a pawn shop, and a .22 caliber pistol, which he sold in November of 1988 at a gun auction. He stated that he owned no other guns in the past three years and that Ms. Dunning had no access to a firearm.

On September 14, 1989, after obtaining a warrant, FBI agents searched Dunning and Jones' residence to locate a pistol Dunning purportedly used in intimidating witnesses in the loan fraud case. During the search, Agent Slate asked Jones if there were any weapons in the house, and Jones responded that there were none. Agents then found a .22 caliber pistol hidden in a heater vent. According to the government, Jones admitted to the agents that the gun was his. Jones contends he stated only that the gun was not Dunning's.

On September 21, 1989, Jones was subpoenaed to give a fingerprint sample to be compared with any prints found on the gun uncovered in the search. Agents Slate and Michael Grant testified that Jones admitted during the fingerprinting that he had lied earlier to FBI agents and the grand jury about his ownership of the hidden gun. On the basis of this statement, Jones was indicted and convicted of giving false statements to the FBI and to the grand jury.

■ Jones' first argument in this appeal is that there was insufficient independent evidence to corroborate his admission that he made the false statements. Both parties agree on the legal standard to be applied to resolve this issue. A conviction based on an extrajudicial incriminating statement cannot be sustained unless the government " 'introduce[s] substantial evidence which would tend to establish the trustworthiness of the statement.... It is

sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth.' " *United States v. Shunk,* 881 F.2d 917, 919 (10th Cir.1989) (citing *Opper v. United States,* 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L.Ed. 101 (1954)); *see also United States v. Wolfenbarger,* 696 F.2d 750, 753 (10th Cir. 1982). It is not necessary that the corroborating evidence alone be sufficient to prove the crime charged. *Wolfenbarger,* 696 F.2d at 753.

■ In this case, there is ample independent evidence to establish the trustworthiness of Jones' incriminating statements. First, the two FBI agents present during Jones' fingerprinting heard Jones make the statement. Second, Jones' statement to Agent Slate on August 14 and to the grand jury on August 23 were inconsistent, thus creating the inference that one or both were false. Jones stated first that he sold the gun to a man named Al, but later said that he sold the gun to an unidentified man at an auction. Finally, the most persuasive evidence to corroborate Jones' admission that he lied about his possession of a gun is the fact that a gun was recovered during the search of Jones' home, after he told both Agent Slate and the grand jury that he possessed no firearms. Two FBI agents testified that Jones admitted during the search that the hidden gun was his.

■ On appeal, Jones argues that the FBI agents' testimony, that Jones admitted during the search that the concealed gun was his, is not trustworthy. Jones misconstrues the applicable legal standard. The question is not the trustworthiness of the corroborating evidence; it is whether there is sufficient evidence to establish the trustworthiness of Jones' admission during fingerprinting that he made the false statements to the FBI and the grand jury. *See Opper,* 348 U.S. at 93, 75 S.Ct. at 164. In an appeal from a criminal conviction, the evidence is taken in the light most favorable to the government. *See United States v. Gay,* 774 F.2d 368, 372 (10th Cir.1985). Therefore, in assessing whether there is substantial corroborating evidence to support Jones incriminating statement,

we may accept as true the agents testimony that during the search Jones admitted the gun hidden in the heater vent was his. We need not consider whether the FBI agents' testimony was trustworthy.

■ Jones' second argument is that his statement during the search regarding ownership of the gun should have been suppressed because he was not informed of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Miranda* requires a defendant who is taken into custody be informed of certain basic rights against self-incrimination. The question in this case is whether Jones was "in custody" when he made the statement during the search. Both parties concur that the standard set forth in *California v. Beheler*, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983), governs. Under *Beheler*, "the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Id.* at 1125, 103 S.Ct. at 3520 (citing *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977)).

Jones moved to suppress his statement before trial. In its order on the motion, the trial court recounted the circumstances of the search. The search was conducted by six FBI agents at approximately 7:00 a.m. Federal agents were permitted to enter the home after broadcasting their intention to conduct the search over a public address system. Neither Jones nor Ms. Dunning were arrested or otherwise physically restrained during the search. They were asked to remain in the living room during the 30-minute search.

Jones contends that he informed Agent Slate that he needed to leave the scene to go to work, but that Slate told him he was not to get up for any purpose. Slate testified that this did not occur and that Jones was free to leave at any time. In resolving this dispute, the trial court found

the testimony of the Special Agent to be credible both from his own demeanor and special recollection of the facts, and by comparison to the testimony of the defendant. Further, the agents's statements were bolstered by the defendant's awareness that one month prior to the search of his residence, the home of Ms. Dunning's mother was searched and she was permitted to leave amidst the search.

R.Doc. 39 at 3. Based on these facts, the trial court concluded that Jones was not in custody during the search because "a reasonable person in the defendant's position would think he was free to leave," *id.* at 5 (relying on *United States v. Chenault*, 844 F.2d 1124, 1128 (5th Cir.1988)). The court further found that Jones' statement was voluntary, particularly because Jones testified that he did not feel compelled to answer Agent Slate's question about ownership of the gun. We agree with its conclusion.

On appeal, Jones lists nine reasons why he should have been considered in custody during the search. All but one were considered by the trial court in its ruling on the motion to suppress. Jones' only new argument is that, when first approached by Agent Slate on August 14, 1989, he was told that if he did not answer Slate's questions he would be placed under arrest. Even if true, this conversation, taking place one month earlier, could not have a substantial impact on Jones' perception at the time of the search. Moreover, as the trial court and the government note, there are a number of cases in which the defendant faced a more coercive environment but was found not to be in custody. *See, e.g., United States v. Hocking*, 860 F.2d 769, 772–73 (7th Cir.1988); *United States v. Chenault*, 844 F.2d at 1127–29; *United States v. Chalan*, 812 F.2d 1302, 1305–07 (10th Cir.1987); *United States v. Timpani*, 665 F.2d 1, 3 (1st Cir.1981).[1]

---

1. The government also argues that Jones' statements while being fingerprinted at the FBI should not be suppressed. Although Jones raised this issue in his original motion to suppress, he does not argue it on appeal. Therefore, we need not address the trial court's ruling as to these statements.

■ Jones next asserts that he was deprived of a fair trial when, in response to counsel's statement during closing argument that Jones should not be sent to prison for his misstatements, the court noted Jones' conviction would not necessarily result in incarceration. *See* Tr. Vol. II at 187. The nub of this issue is whether, under the Sentencing Guidelines, Jones could have received anything less than a prison sentence. The parties disagree over the proper application of the Guidelines in this instance.

The Sentencing Guidelines for the crimes upon which Jones was convicted are Guidelines § 2F1.1 (applicable to 18 U.S.C. § 1001) and § 2J1.3 (applicable to 18 U.S.C. § 1623). The government contends that the above colloquy between counsel for the defendant and the court concerned only Count I, the charge relating to Jones' false statements to the FBI in violation of 18 U.S.C. § 1001. Under Guideline § 2F1.1, the base offense level for this crime is 6. The government is correct that, assuming no adjustments to this level and a criminal history of Category I, the applicable sentencing range is from 0–6 months. Therefore, with respect to this count alone, Jones would not necessarily face incarceration. It follows that the trial court did not err in correcting counsel's statement to this effect, since there was no certainty that Jones would be convicted under one or both counts.[2] Finally, as the government aptly notes, there is abundant authority that it is improper to inform the jury of the defendant's possible punishment. *See Rogers v. United States*, 422 U.S. 35, 40, 95 S.Ct. 2091, 2095, 45 L.Ed.2d 1 (1975); *United States v. Thomas*, 895 F.2d 1198, 1200 (8th Cir.1990); *United States v. Goodface*, 835 F.2d 1233, 1237 (8th Cir.1987); *United*

*States v. Chapman*, 443 F.2d 917, 920 (10th Cir.1971).

■ Jones' final argument in this appeal is that the trial court erred by not submitting the question of the materiality of his false statements to the jury. Jones acknowledges that the recent Supreme Court case of *Kungys v. United States*, 485 U.S. 759, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988), is relevant. In *Kungys*, the Court cited with approval a Sixth Circuit case, *United States v. Abadi*, 706 F.2d 178 (6th Cir.), *cert. denied*, 464 U.S. 821, 104 S.Ct. 86, 78 L.Ed.2d 95 (1983), in which the court held that the issue of materiality under 18 U.S.C. § 1001 was a legal question for the court and not one for the trier of fact. Jones argues that the reference to *Abadi* was dicta, since the issue in *Kungys* was the materiality of misrepresentations made in connection with naturalization proceedings under 8 U.S.C. § 1427, not materiality under 18 U.S.C. § 1001. Jones suggests that the better reasoned decision is *United States v. Irwin*, 654 F.2d 671 (10th Cir. 1981), *cert. denied*, 455 U.S. 1016, 102 S.Ct. 1709, 72 L.Ed.2d 133 (1982), a case decided before *Kungys* in which the Tenth Circuit held that materiality under 18 U.S.C. § 1001 was a jury question.

Unfortunately for Jones, there is recent Tenth Circuit precedent directly on point. In *United States v. Daily*, 921 F.2d 994, 1004 (10th Cir.1990) (footnote omitted), the court stated:

> Upon consideration of the Supreme Court's decision in *Kungys v. United States*, 485 U.S. 759, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988), we conclude that materiality under § 1001 is a question of law for the court and, accordingly, the trial court's refusal to submit the materiality issue under § 1001 to the jury was not error. The court now disavows our

---

2. In addition, Jones' conviction on Count I had no incremental effect on his total sentence when coupled with his conviction on Count II. Guideline 2J1.3 covers crimes for perjury under 18 U.S.C. § 1623 as charged in Count II. The base offense level for perjury under this Guideline is 12, and it permits an increase for obstruction of justice to 15. Without the enhancement for obstruction of justice, Jones faced a minimum of 10–16 months in prison for his convic-

tion on Count II. Even assuming that the two counts are not grouped together, *see* Guideline §§ 3D1.1–3D1.4 (grouping rules), Jones' conviction under Count I would not increase his combined offense level when added to the conviction under Count II because the Count I conviction was at least six levels less serious that the Count II conviction. *Id.* § 3D1.4 Thus, Jones effectively received no additional prison time based on his conviction under Count I.

prior holdings to the contrary. We are mindful that our panel is bound by prior decisions of this court, *see, e.g., United States v. Berryhill,* 880 F.2d 275, 277–78 (10th Cir.1989), but we are authorized by all the active judges of this court to state that the court endorses this overruling of our prior cases on the materiality issue under § 1001 in light of the Supreme Court's guidance in *Kungys.*

One of the cases the court expressly overruled was *United States v. Irwin. See id.* at 1004 n. 11. Consequently, the trial court did not err in failing to submit the issue of materiality to the jury in this case.

Jones' convictions under Counts I and II are affirmed.