**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                  No. 96-4898

CAROLYN JEAN HARRIS,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(CR-96-23)

Argued: January 30, 1998

Decided: March 11, 1998

Before RUSSELL* and WILKINS, Circuit Judges, and TRAXLER,
United States District Judge for the District of South Carolina,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Keith Alan Williams, BROWNING & HILL, L.L.P.,
Greenville, North Carolina, for Appellant. Yvonne Victoria Watford-

_____

*Judge Russell participated in the hearing of this case at oral argument
but died prior to the time the decision was filed. The decision is filed by
a quorum of the panel. 28 U.S.C. § 46(d).

McKinney, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Janice McKenzie Cole, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Carolyn Jean Harris ("Harris") appeals her conviction for aiding and abetting her son Steven Harris ("Steven") in possessing with intent to distribute crack cocaine and cocaine powder in violation of 21 U.S.C.A. § 841(a)(1) (West 1981) and 18 U.S.C.A. § 2 (West 1969). We affirm.

I.

On November 7, 1994, a confidential informant contacted Greenville, North Carolina, Police Officer Stacy Hilliard ("Hilliard") with a tip concerning Harris. Specifically, the informant, who had been at Harris' residence earlier that afternoon, told Hilliard that the informant had personally observed a plastic bag containing a large amount of cocaine and money which Harris had received from Steven. According to the informant, the drugs would only be at the residence for three or four days. The informant also advised Hilliard that Harris would be working until 1:30 or 2:00 a.m., and gave Hilliard the address of Harris' residence and a description of the vehicle Harris would be driving. Hilliard conducted surveillance of the residence until the vehicle described by the informant arrived shortly before 2:00 a.m. Upon confirming Harris' arrival at her residence, Hilliard presented an application for a search warrant to a state magistrate. In addition to reciting the information received from his informant, Hilliard advised the magistrate that he had worked with the informant

2

since 1990 and had obtained information from her which had led to arrests and convictions in the past. At the time, Hilliard had also received information that Steven had a pattern of returning from out of town trips early in order to keep his movements unpredictable. Thus, Hilliard advised the magistrate that the search warrant would be executed upon receipt. The search warrant was issued at 2:03 a.m.

Approximately forty minutes later, four police officers, including Hilliard, arrived at Harris' residence and knocked on the door with their firearms drawn. The door was opened by Danny Taft ("Taft"). Taft allowed the officers to enter the residence and, once they established that only Taft and Harris were in the house, all of the officers holstered their weapons. Several additional officers and drug dogs waited outside. One officer went to the bedroom and instructed Harris to get out of bed, but allowed her to dress before going into the living room. Hilliard then asked Harris about the plastic bag and, after assuring Harris that he was not interested in ransacking her house, asked her if she would tell him where she put the bag. Harris told Hilliard that the bag was on the coffee table on her enclosed back porch, where the officers found it concealed under a blanket. The bag contained approximately 936 grams of cocaine hydrochloride, 354 grams of crack, and over $19,000 in cash. Harris and Taft were arrested.[1]

After her arrest, Harris advised Hilliard that Steven had asked her to keep the bag while he was away on a three to four day trip to New Jersey. Harris denied knowing drugs were in the bag, however, claiming that Steven only told her that the bag contained $16,000 in cash which his friend "Carlito" had obtained from a used car business. Harris further advised Hilliard that she was instructed to put the bag on her enclosed back porch, which had a locking door leading to the outside. According to Hilliard's testimony, Harris admitted asking Steven if he was dealing drugs when she was given the bag, but stated that Steven and Carlito simply looked at each other without responding. At trial, Harris denied knowing of Steven's drug dealing and denied asking Steven if he was dealing drugs when he gave her the bag. Harris testified that she asked Steven where the money came

_____

[1] The charges against Taft were later dismissed. Steven Harris, who was indicted with his mother, eventually pled guilty to drug charges stemming from this incident.

3

from and that he and Carlito "smirked" at each other before telling her it was from Carlito's car business. Although Harris admitted telling Hilliard that Steven instructed her to put the plastic bag on the back porch, she denied the truth of that statement at trial.

II.

A.

Harris challenges on a number of grounds the district court's denial of her motion to suppress the drugs seized at her residence. We address, and reject, each ground in turn.

First, Harris contends that her Fourth Amendment rights were violated because the search warrant was executed at her residence during early morning hours. Harris does not argue that execution of a search warrant during early morning hours is forbidden under any circumstances. Rather, she asserts that Hilliard's early morning search was not justified because he had been told the drugs would remain in the residence for at least three days. We disagree and conclude, based upon the circumstances of the case and the information known to the officers, that execution of this warrant during the nighttime hours was reasonable. See United States v. Curry, 530 F.2d 636, 637 (5th Cir. 1976) ("[P]robable cause must be shown for the issuance of the warrant, but beyond that the only requirement is that there be cause for carrying on the unusual nighttime arrest or search that, upon showing made, convinces the magistrate that it is reasonable."); United States v. $22,287 in United States Currency, 709 F.2d 442, 448 (6th Cir. 1983) (refusing to apply the exclusionary rule where, "under the circumstances presented it was clear that a nighttime search was reasonable.").

The confidential informant told Hilliard that Harris would not arrive home from work until the late-night or early-morning hours. Hilliard also had information which strongly suggested that Steven was involved with the drugs, and he had been advised that Steven had a reputation of returning early from trips to keep his movements unpredictable. Accordingly, Hilliard conducted surveillance of the residence until the vehicle described by the informant arrived and

4

then obtained a search warrant. The warrant was obtained at 2:03 a.m. and executed at 2:45 a.m.

This course of action did not violate Harris' Fourth Amendment rights. Executing the warrant while Harris was at home was reasonable, as it minimized the risk of Harris having the drugs with her while she was away. Once the officers confirmed that Harris had arrived home as predicted by the informant, the Fourth Amendment did not require them to use police resources to maintain surveillance of the residence all night, ensuring that Harris stayed put and that no one else came for the drugs, before executing the warrant. Harris' contention that the time was unreasonable simply because the officers had been told that the drugs would be with Harris for three to four days does not avail her. The officers also had information that Steven had a practice of returning early from trips which, coupled with the known ease with which drugs are moved, counsels in favor of Hilliard's decision not to wait until daylight hours to execute the warrant.

Harris also claims that the district judge refused to apply the exclusionary rule to her motion to suppress, opting instead to simply disregard the policy and precedent of the rule. We disagree. First, this court reviews the constitutionality of a search de novo, see United States v. Rusher, 966 F.2d 868, 873 (4th Cir. 1992), and has concluded that the nighttime search was reasonable under the circumstances. Furthermore, Harris' complaint arises out of comments made by the district judge during a hearing on the motion to suppress, in which he mused over the question of whether the exclusionary rule should apply to bar evidence seized during an otherwise lawful search simply because of poor timing. Harris' contention that the district judge wholly disregarded the exclusionary rule as a principle of law is an overstatement of the court's dialogue with the attorneys during the hearing. In any event, it is clear that the district judge considered the issue and concluded that exclusion of the evidence was not appropriate because the warrant was executed at a reasonable time, a conclusion with which this court agrees.**2**

_____

**2** Harris also challenged, but did not pursue at oral argument, the district judge's refusal to suppress the drugs because the search warrant was not supported by probable cause. To assess whether probable cause sup-

5

B.

Harris also challenges a supplemental jury instruction on "willful blindness" which was given by the court at the request of the jury. "The willful blindness instruction allows the jury to impute the element of knowledge to the defendant if the evidence indicates [a defendant] purposely closed his eyes to avoid what was taking place around him." United States v. Schnabel, 939 F.2d 197, 203 (4th Cir. 1991). Harris does not contend that the initial charge on willful blindness was unwarranted by the evidence. Rather, Harris objects to the supplemental instruction, contending that it improperly allowed the jury to conclude that knowledge could be imputed to her solely on the basis of negligence or a finding that she "should have known" a fact.

_____

ported a search warrant, the court applies a "totality-of-the-circumstances" test, which analyzes the reliability or veracity of the informant as well as the informant's basis of knowledge. See Illinois v. Gates, 462 U.S. 213, 233 (1983); United States v. Wilhelm, 80 F.3d 116, 119 (4th Cir. 1996). We reject Harris' challenge, which focuses on the reliability of the confidential informant, and conclude there was probable cause for issuance of the search warrant. The informant was personally known by Hilliard, who had been working with the informant for approximately four years, and Hilliard had received information from the informant which had led to more than one arrest and conviction.

Similarly, Harris challenged, but chose not to pursue at oral argument, the district judge's refusal to suppress the drugs because she directed officers to the location of the bag before she was given warnings pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). We conclude that no Miranda warnings were required at the time, however, because Harris' "freedom of action [was not] curtailed to a degree associated with formal arrest." Berkemer v. McCarty, 468 U.S. 420, 440 (1984). Harris was told to come downstairs and wait in the living area while the search was being conducted, but was not handcuffed or otherwise restrained. Instead, Harris was asked about the bag as an alternative to a complete search of her home by law enforcement officers and drug dogs. This is not the type of custodial interrogation that Miranda prohibits. See United States v. Howard, 991 F.2d 195, 200 (5th Cir. 1993) (holding that defendant was not in custody when he was told he was not under arrest, even though he was told to stay put while the search took place); United States v. Jones, 933 F.2d 807, 810 (10th Cir. 1991) (same).

6

When reviewing the propriety of jury instructions, a single instruction is not viewed in isolation. Rather, the court considers "whether taken as a whole and in the context of the entire charge, the instructions accurately and fairly state the controlling law." United States v. Rahman, 83 F.3d 89, 92 (4th Cir. 1996). The court has reviewed the challenged supplemental instruction and notes that the jury was specifically instructed that knowledge could only be imputed upon a finding that the defendant deliberately closed her eyes to a fact. Furthermore, the district court cautioned that knowledge could not be imposed on the basis of a mistake, accident, or other innocent reason. Contrary to Harris' argument, the supplemental instruction did not state that Harris could be held to know that which she "should have known." Rather, it correctly conveyed that Harris could be held to have knowledge of a fact that was obvious, but which she deliberately chose not to know.

III.

For the foregoing reasons, we affirm Harris' conviction.

AFFIRMED