The **PEOPLE** of the State of Colorado, Plaintiff–Appellant,

v.

Jesus Manuel **MENDOZA–RODRIGUEZ**, Defendant–Appellee.

No. 89SA292.

Supreme Court of Colorado, En Banc.

April 16, 1990.

G.F. Sandstrom, Dist. Atty., and Scott B. Epstein, Chief Deputy Dist. Atty., Pueblo, for plaintiff-appellant.

David F. Vela, State Public Defender, and Shannon Reed and Victor I. Reyes, Deputy State Public Defenders, Pueblo, for defendant-appellee.

Justice VOLLACK delivered the Opinion of the Court.

The People brought this interlocutory appeal pursuant to C.A.R. 4.1[1] to challenge the district court's order suppressing all statements made by defendant Jesus Manuel Mendoza–Rodriguez after he was taken into the custody of the Pueblo police. The district court held that the failure of the Pueblo police to issue a *Miranda*[2] warning made their initial interrogation illegal, and that the subsequent issuance of the *Miranda* warning was insufficient to purge the taint of the initial illegal questioning. The district court suppressed all statements made by the defendant while he was in the custody of the Pueblo police. We reverse and remand the case to the trial court.

## I.

On January 17, 1989, Pueblo Police Detective Daniel Snell investigated the death

---

1. C.A.R. 4.1 provides that:

    (a) **Grounds.** The state may file an interlocutory appeal in the supreme court from a ruling of a district court granting a motion under Crim.P. 41(e) and (g) and Crim.P. 41.-1(i) made in advance of trial by the defendant for return of property and to suppress evidence or granting a motion to suppress an extra-judicial confession or admission; provided that the state certifies to the judge who granted such motion and to the supreme court that the appeal is not taken for purposes of delay and the evidence is a substantial part of the proof of the charge pending against the defendant.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

of Jose Candelaria. Candelaria's body had been discovered that morning in the alley behind a Pueblo bar named the Happy Inn. Detective Snell questioned an employee of the Happy Inn who had worked the previous evening. The employee told Snell that Candelaria and the defendant had been involved in an argument at the bar, and that they had left the bar together and walked down the alley behind the Happy Inn. Based on the employee's description of the events of the previous evening, and other information Snell obtained about the defendant, Snell and a fellow officer located the defendant, identified themselves as police officers, and asked to speak to him.

The defendant agreed to accompany the officers to the police station to discuss what had happened the previous night at the Happy Inn. The officers handcuffed the defendant and put him in the back of their patrol car. The officers took the defendant to an interview room at the police station and removed his handcuffs.

At the station Detective Snell began interrogating the defendant. During the entire interrogation Detective Snell and the defendant conversed in English. Detective Snell interrogated the defendant about his immigration status for about twenty minutes, and then asked the defendant about the events at the Happy Inn the night before. The defendant admitted that he had been at the Happy Inn but stated that nothing had happened, and that he had left the bar with two women to go to another tavern.

Detective Snell then advised the defendant of his *Miranda* rights. Detective Snell repeated a series of questions and warnings contained in an English *Miranda* advisement form. Pueblo Police Sergeant Max Atencio testified that while Detective Snell was warning the defendant of his rights in English, he provided the defendant with a copy of the *Miranda* advisement in Spanish. The defendant declined to initial each advisement, but he did sign the advisement form, and he indicated to

Detective Snell that he understood his rights. After the officers advised the defendant of his *Miranda* rights, the defendant agreed to talk about the events at the Happy Inn the night before. During the interrogation the defendant submitted to a polygraph examination.

When the Pueblo police finished interrogating the defendant Detective Snell booked the defendant. When the defendant was booked Detective Snell noticed blood on the defendant's boot. The defendant consented to having Detective Snell take blood and hair samples at the booking. Detective Snell also took the defendant's clothes into evidence. On February 8, 1989, the defendant was charged with two counts of murder in the first degree.[3]

The defendant filed a series of suppression motions related to his interrogation by the Pueblo police, including a motion to suppress statements made by the defendant to the polygraph examiner, and a motion to suppress statements made by the defendant to the Pueblo police, on the ground that the statements were obtained in violation of the fifth amendment to the United States Constitution and article II, section 16, of the Colorado Constitution. The district court held a hearing on the motions at which the court heard testimony about the officers' interrogation of the defendant.

The district court issued an order containing findings of fact and conclusions of law. The court found that the police had probable cause to arrest the defendant based on the police investigation, the fact that the defendant had a motive and an opportunity to commit the crime, and that he was the last person seen with the deceased.

The district court found that "the Defendant was in custody for *Miranda* purposes when he was handcuffed, put in the police vehicle, and taken to the police station for questioning." The district court concluded that the defendant was in custody because the police handcuffed the defendant, and

---

**3.** § 18–3–102(1)(a), 8B C.R.S. (1986) (after deliberation), and § 18–3–102(1)(b), 8B C.R.S. (1986)   (felony murder).

because the officers never told the defendant that he was free to leave, despite the defendant's repeated questions about whether he was being held for immigration proceedings. The court concluded that "a reasonable person in the position of the Defendant would not have believed himself free to leave after handcuffing."

The court concluded that the initial fifteen- to twenty-minute questioning of the defendant was "prior to proper *Miranda* advisement." [4] The court concluded that "[t]here was nothing about the advisement which was subsequently given which changed the causal link between the initial pre-*Miranda* interrogation and the interrogation after warnings were given." The district court reasoned that "[s]imply reading a Defendant his *Miranda* rights is not necessarily sufficient to purge the taint of the initial illegal questioning." The court concluded that "[a]ll statements of the Defendant made at the police station are suppressed for failure to properly warn the defendant of his rights pursuant to *Miranda*."

The district court addressed whether the statements made by the defendant subsequent to the *Miranda* advisement were voluntary. The district court found that the interview of the defendant was "relaxed and primarily friendly." The court found that "[n]o threats or promises were made," and that "the [defendant's] statements were a product of a rational intellect and free will." The district court concluded that "[t]he People have shown, by [a] preponderance of the evidence, that the statements of the Defendant after advisement were voluntary." The district court stated that the defendant's voluntary statements could be used for impeachment purposes if the defendant testified at trial in a manner inconsistent with those statements.

Finally, the district court concluded that the boots and clothing taken from the defendant were products of the lawful arrest, and not of the interrogation. The court concluded that the blood and hair samples were voluntarily given.

The district court issued an order granting the defendant's motion to suppress statements "for failure to advise the defendant of his rights pursuant to *Miranda* prior to commencing [the] interrogation." The court ordered the suppression of all statements made by the defendant after he was handcuffed and placed in the patrol car. The court further ordered that the statements made by the defendant after the *Miranda* advisement were admissible at trial for impeachment purposes.

The People appeal the district court's suppression order.

## II.

■ The defendant contends that this court should dismiss the People's appeal because the statements are not a substantial part of the proof of the charges pending against the defendant. We disagree.

In an interlocutory appeal the People must certify to this court that the evidence suppressed by the trial court "is a substantial part of the proof of the charge pending against the defendant." C.A.R. 4.1. The People filed in this court a certification in proper form containing the necessary language required by C.A.R. 4.1.

Our independent review of the record provided on appeal convinces us that the statements suppressed by the trial court constitute a substantial part of the proof of the charges pending against the defendant. *People v. District Court,* 785 P.2d 141, 144 (Colo.1990).

## III.

■ In this case we address the constitutional standards governing the admissibility of statements by criminal defendants who are subjected to custodial interrogation by the police before the police issue a *Miranda* warning. The United States Supreme Court addressed this issue in *Ore-*

---

4. The court found that the defendant was properly advised in English of his *Miranda* rights, and was provided a copy of the *Miranda* advisement in Spanish. The court found that the defendant was capable of speaking and understanding English, and that the defendant was familiar with the *Miranda* warning, having received it on two previous occasions.

gon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). We adopt the reasoning of Elstad and hold that a statement made by the defendant before the police administer a Miranda warning does not automatically render subsequent voluntary Mirandized statements by the defendant inadmissible.

In Miranda v. Arizona, 384 U.S. at 444, 86 S.Ct. at 1612, the United States Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." The Miranda Court held that before state authorities can engage in custodial interrogation of an individual, they must observe certain procedural safeguards. Id. at 478, 86 S.Ct. at 1629–30. The procedural safeguards identified by the Court included warnings about the right to counsel and the right to remain silent. Id. at 478–79, 86 S.Ct. at 1629–30.

In Oregon v. Elstad, the Court addressed the same issue we confront in this case: "[W]hether an initial failure of law enforcement officers to administer the warnings required by Miranda v. Arizona, ... without more, 'taints' subsequent admissions made after a suspect has been fully advised of and has waived his Miranda rights." 470 U.S. at 300, 105 S.Ct. at 1288. In Elstad the defendant made an incriminating statement in response to an officer's question during a custodial interrogation. Id. at 301–02, 105 S.Ct. at 1288–89. The defendant then knowingly waived his Miranda rights and confessed to stealing property from a neighbor's house. Id.

The Elstad Court explained that the analysis that evidence obtained by the police in violation of the fourth amendment is inadmissible as "fruit of the poisonous tree" is inapplicable to cases involving statements obtained after procedural Miranda violations. Elstad, 470 U.S. at 306, 105 S.Ct. at 1291–92. This is because the "purpose of the Fourth Amendment exclusionary rule is to deter unreasonable searches, no matter how probative their fruits." Id. (citing Dunaway v. New York, 442 U.S. 200, 216–17, 99 S.Ct. 2248, 2258–59, 60 L.Ed.2d 824 (1979)). "The Miranda exclusionary rule, however, serves the Fifth Amendment and sweeps more broadly than the Fifth Amendment itself." Id. The Elstad Court reasoned that "[t]he Fifth Amendment prohibits the use by the prosecution in its case in chief only of compelled testimony," and that a failure to administer Miranda warnings creates a presumption that subsequent unwarned statements have been compelled. Id. 470 U.S. at 306–07, 105 S.Ct. at 1291–92. In the Court's words, "[t]he failure of police to administer Miranda warnings does not mean that the statements received have actually been coerced, but only that courts will presume the privilege against compulsory self-incrimination has not been intelligently exercised." Id. at 310, 105 S.Ct. at 1293 (citing New York v. Quarles, 467 U.S. 649, 654 & n. 5, 104 S.Ct. 2626, 2630–31 & n. 5, 81 L.Ed.2d 550 (1984)). The Elstad Court concluded that:

> absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of Miranda warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement. In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights.

Id. at 314, 105 S.Ct. at 1296; see also People v. Trujillo, 773 P.2d 1086, 1093 (Colo.1989).

█ Under Elstad, in order to determine the voluntariness of post-Miranda statements, a court must first determine whether the defendant's pre-Miranda statements were given voluntarily. If they were, then the post-Miranda statements would not be rendered involuntary. Elstad, 470 U.S. at 314, 105 S.Ct. at 1296. If the pre-Miranda statements were not made voluntarily, however, the defendant's post-Miranda

statements could be admitted only if they were not "tainted" by the prior involuntary statements. "When a prior statement is actually coerced, the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators all bear on whether the coercion has carried over into the second confession." *Id.* at 310, 105 S.Ct. at 1293; *see also People v. Saiz,* 620 P.2d 15, 20 (Colo.1980); *People v. Lowe,* 616 P.2d 118, 123 (Colo.1980).

## IV.

We apply the foregoing principles to the district court's suppression order to determine whether the district court impermissibly concluded that the officers' initial failure to administer a *Miranda* warning rendered the defendant's subsequent statements inadmissible.

■ The Pueblo officers' initial failure to advise the defendant of his *Miranda* rights did not necessarily impermissibly taint his subsequent Mirandized statements. Detective Snell interviewed the defendant for fifteen to twenty minutes before advising him of his *Miranda* rights. The district court did not consider whether statements made during the initial pre-*Miranda* interrogation were voluntary. The statements made by the defendant prior to the Pueblo officers' issuance of the *Miranda* advisement may have been the kind of voluntary but unwarned statements that, according to *Elstad,* do not affect the admissibility of subsequent statements preceded by *Miranda* warnings. The district court erred in concluding from the officers' failure to

immediately give a *Miranda* warning that the statements made by the defendant after the officers issued the *Miranda* advisement necessarily were unconstitutionally obtained. *Cf. Saiz,* 620 P.2d at 17; *Lowe,* 616 P.2d at 121; *but see United States v. Carter,* 884 F.2d 368, 373 (8th Cir.1989) (holding *Elstad* inapplicable where federal postal inspectors invoked coercive techniques to obtain inculpatory statements from the defendant before informing him of his *Miranda* rights).

The defendant argues that the failure of the police to issue a *Miranda* warning at the time the defendant was taken into custody rendered the defendant's statements after the *Miranda* warning inadmissible. The defendant relies on *Saiz,* 620 P.2d 15, and *Lowe,* 616 P.2d 118, in which we upheld district court orders suppressing statements made by the defendant where the police obtained incriminating admissions from the defendant without first issuing a *Miranda* advisement.[5] Under the facts of this case *Saiz* and *Lowe* are not applicable.

The remaining issue is whether the statements made by the defendant after the *Miranda* advisement are inadmissible on the ground that, despite the subsequent *Miranda* advisement, the statements were made involuntarily. "[T]he admissibility of [statements made subsequent to *Miranda* warnings] should turn ... solely on whether [they] are knowingly and voluntarily made." *Elstad,* 470 U.S. at 309, 105 S.Ct. at 1293. Under *Elstad,* these statements may be rendered involuntary by the taint of involuntary statements made before a *Miranda* advisement is given. The ques-

5. In *Lowe,* police officers investigating a murder asked the defendant prior to giving him a *Miranda* advisement if he knew why they had come to talk to him, and the defendant said "I know. I kind of thought you would be out to the house at 6:00." 616 P.2d at 121. In *Lowe* we concluded, based on the facts surrounding the defendant's interrogation, that the defendant had not voluntarily waived his right to remain silent. *Id.* at 123–24. In *Saiz,* another case involving a murder investigation, we noted that when questioning of the juvenile defendant "resumed shortly after he had let the cat out of the bag, the psychological disadvantage of having admitted his guilt and contradicted his exculpatory account of the incident was at its peak."

620 P.2d at 20. We stated that "[a]lthough a suspect who gives a statement under circumstances violative of his constitutional rights is not perpetually disabled from making other admissible statements, under the circumstances of this case, neither time nor informed reflection had been permitted the defendant." *Id.* (citation omitted). *Saiz* and *Lowe* were decided before the decision of the United States Supreme Court in *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285. In *Elstad* the Supreme Court stated that the admissibility of Mirandized statements made after an unwarned interrogation depends "solely on whether [the statement] is knowingly and voluntarily made." *Id.* at 309, 105 S.Ct. at 1293.

tion not addressed by the trial court is whether the defendant's pre-*Miranda* statements were made voluntarily.

 Statements are voluntary if they are the product of an individual's free and rational choice. *Greenwald v. Wisconsin*, 390 U.S. 519, 521, 88 S.Ct. 1152, 1153–54, 20 L.Ed.2d 77 (1968); *People v. Rhodes*, 729 P.2d 982, 984 (Colo.1986). The question is whether the individual's will has been overborne. *Townsend v. Sain*, 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.'" *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986). To be voluntary, a statement "must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. *Brady v. United States*, 397 U.S. 742, 753, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970); *People v. Freeman*, 668 P.2d 1371, 1378 (Colo.1983). Psychological coercion as well as physical coercion may render a statement involuntary in some circumstances. *Freeman*, 668 P.2d at 1379. In making the voluntariness determination, the trial court must consider the totality of the circumstances surrounding the defendant's statement. *Clewis v. Texas*, 386 U.S. 707, 708, 87 S.Ct. 1338, 1339, 18 L.Ed.2d 423 (1967); *People v. De-Baca*, 736 P.2d 25, 27 (Colo.1987). The burden is on the prosecution to prove by a preponderance of the evidence that the statement was made voluntarily. *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 626–27, 30 L.Ed.2d 618 (1972); *People v. DeBaca*, 736 P.2d at 27.

Although the trial court found that the post-*Miranda* statements were voluntary, it did not apply the *Elstad* test. We, therefore, remand the case to the trial court to review the existing record and determine the voluntariness of the defendant's pre-*Miranda* statements and their effect on the voluntariness of his post-*Miranda* statements, applying the criteria outlined in *Oregon v. Elstad*.

Order reversed and case remanded with directions.