**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellant,**

**v.**

**Michael Joseph HAMILTON,**
**Defendant–Appellee.**

**No. 92SA21.**

Supreme Court of Colorado,
En Banc.

July 7, 1992.

James F. Smith, Dist. Atty., and Steven L. Bernard, Deputy Dist. Atty., Brighton, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, and Lisabeth P. Castle, Deputy State Public Defender, Brighton, for defendant-appellee.

Justice QUINN delivered the Opinion of the Court.

The People, pursuant to C.A.R. 4.1, have filed this interlocutory appeal from a ruling in which the district court suppressed several inculpatory statements made by the defendant, Michael Hamilton, to police officers contemporaneously with and subsequent to his arrest for second-degree burglary of a dwelling. The district court suppressed the defendant's initial statement to the arresting officer because it was the result of a custodial interrogation which had not been preceded by the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602; 16 L.Ed.2d 694 (1966). The district court also suppressed the defendant's subsequent statements as the illegal products of the initial statement made by the defendant without the benefit of the *Miranda* warnings. We affirm that part of the district court's ruling suppressing the defendant's initial statement. Because, however, the district court applied an erroneous legal standard in suppressing the subsequent statements, we reverse that part of the ruling suppressing those statements. We accordingly remand the case to the district court for further proceedings in accordance with the correct standard for constitutional admissibility of the inculpatory statements made by the defendant subsequent to his initial unwarned statement.

I.

The defendant was charged in the Adams County District Court with second-degree burglary of a dwelling. After pleading not guilty to the charge, the defendant filed a motion to suppress several incriminating statements made to the police on the grounds that they were made without an adequate warning or waiver of *Miranda* rights and were constitutionally involuntary. The district court conducted an evidentiary hearing on the suppression motion at which the following evidence was elicited.

On April 23, 1991, Charles Worley reported to the Commerce City Police Department that a videocassette recorder had been stolen from his Commerce City home. The burglar had gained entry to the Worley residence by pushing on a window and dislodging a piece of wood placed in the track of the window. Worley told the investigating officer that the defendant had stayed at the Worley residence for a period of time and knew that the window could be opened in this manner.

On the day after the burglary Worley telephoned the police and reported that the defendant was present at the Worley home at that time. Officer Abbott responded to the Worley residence and met Worley in the front yard. Worley told Officer Abbott that Hamilton was inside the home. As Worley and the officer were walking into the home, Worley told the officer that Hamilton was a little bit "slow" and that he had already admitted the theft of the videocassette recorder.

Officer Abbott and Worley continued talking about the burglary in the front living room of the Worley residence while Hamilton was present in the same room. Officer Abbott then telephoned the police station and received verification that a burglary had occurred at the Worley residence, that a videocassette recorder had been taken, and that the suspect's name was Michael Hamilton.

Officer Abbott testified at the suppression hearing that because it appeared to him that the defendant was in the Worley residence with Worley's consent, he would not have prevented the defendant from leaving before his telephone call to the police station for a verification of the burglary. After receiving the verification of the burglary from the police records department, however, Officer Abbott approached the defendant and asked him his name and asked, "What's happening here between you and Mr. Worley?". Hamilton told the officer his name and stated that he had returned to the Worley residence because he felt guilty about having taken the videocassette recorder. At that point Officer Abbott advised the defendant of his *Miranda* rights. After the defendant stated that he understood his *Miranda* rights, Officer Abbott asked him how he stole the VCR. The defendant responded that he knew how to get into the Worley residence, that he had done so, and that he had taken the videocassette recorder and sold it. Officer Abbott arrested the defendant and took him to the Commerce City police station. Officer Abbott acknowledged during his suppression testimony that the defendant spoke slowly and "formulate[d] his sentences more than most people would."

At the police station Officer Abbott told the defendant that his *Miranda* rights were still in effect and asked the defendant whether he wanted to make a written statement. The defendant stated that he did and wrote out a statement admitting his participation in the burglary. The defendant was subsequently transported to the county jail.

On April 25, 1991, the day after the defendant's arrest, Officer Pfannenstiel, a Commerce City police detective, went to the county jail to interview the defendant. The detective first advised the defendant of his *Miranda* rights and then asked him whether he understood his rights as they were read to him. The defendant responded affirmatively and signed a written acknowledgement that he had been advised of his rights. The defendant, however, did not sign that portion of the form indicating that he understood each of the rights that had been read to him. Detective Pfannenstiel also testified at the suppression hearing that he could not remember if he read the following statement from the advisement form to the defendant: "Knowing my rights and knowing what I'm doing, I now wish to voluntarily talk to you." Neither the defendant's signature nor the detective's signature appeared below this "waiver" provision on the advisement form. After advising the defendant of his *Miranda* rights, the detective questioned the defendant about the burglary and tape-recorded the defendant's confession. Detective Pfannenstiel acknowledged in his suppression testimony that the defendant was "slow" and that he had trouble expressing himself.

The defendant testified at the suppression hearing that he remembered having been read his rights by Officer Abbott at the Worley home but that he did not understand them. He acknowledged, however, that he had been arrested previously, but he did not remember being advised of his *Miranda* rights on those occasions and did not understand what was meant by "rights."

A social services case manager, Bonnie Good, also testified at the suppression hearing. She stated that the defendant had been enrolled in several programs offered by the North Metro Community Services Agency. Ms. Good also stated that the defendant had an IQ of 45 and that he is a "verbal" person who can listen to whatever someone is saying to him and that he "can tell you these words back," but "he's not able to conceptualize." What this means, according to Ms. Good, is that the defendant may say that he understands something but he really "doesn't understand the scope of things that go with that," and as a result a person talking to him believes that the defendant "understands or is more knowledgeable about things than he really is."

The district court, in ruling on the suppression motion, first considered the totality of circumstances surrounding the defendant's initial statement to Officer Abbott at the Worley home and concluded that a rea-

sonable person in that situation, with or without cognitive limitations, would have believed that he was not free to leave the Worley residence and would also have believed that he was about to be arrested for burglary. The district court also ruled that Officer Abbott's first question to the defendant—namely, "What's happening here between you and Mr. Worley?"—constituted custodial interrogation because it was reasonably calculated to elicit an incriminating response from the defendant. The district court accordingly suppressed the defendant's initial statement to the police because it was obtained as a result of a custodial interrogation without a prior *Miranda* advisement.

The district court also suppressed the defendant's second statement to Officer Abbott at the Worley residence made shortly after the first incriminating statement because, in the court's view, the second statement was the immediate product of the first custodial statement made by the defendant without the benefit of the *Miranda* warnings. In addition, the court ruled that the defendant's statement to Officer Abbott at the Commerce City police station shortly after his arrest also was the direct product of the illegal interrogation of the defendant at the Worley home. Finally, the court suppressed the defendant's statement to Detective Pfannenstiel at the county jail made the day after the defendant's initial interrogation and arrest because, according to the court, "[there] is nothing to show that the defendant had any opportunity in the intervening time to interview with an attorney and discuss the matter with counsel" and that "there was nothing to attenuate, significantly attenuate, the effect of the first three confessions" made by the defendant on the day of his arrest.

The People in this interlocutory appeal argue that the district court applied an erroneous standard in determining that the defendant was in custody when he made his first inculpatory statement to Officer Abbott at the Worley home and that the court also erred in suppressing the defendant's subsequent inculpatory statements to the police as the fruit of the initial incriminating statement. We will address these arguments in turn.

## II.

 Prior to interrogating a person in police custody, a police officer is obliged to inform the person of the following rights: that the person has a right not to say anything; that anything he says can be used against him in court; that he has a right to the presence of an attorney; and that if he cannot afford an attorney one will be appointed for him prior to questioning if he so desires. *Miranda,* 384 U.S. at 478–79, 86 S.Ct. at 1630–31. A person is "in custody" not only when the person has been subjected to the constraints associated with a formal arrest, but also when a police interrogation is conducted under circumstances where the person interrogated has been deprived of his freedom of action in a significant way. *Miranda,* 384 U.S. at 476–77, 86 S.Ct. at 1628–29; *People v. Trujillo,* 784 P.2d 788, 791 (Colo.1990). An objective standard applies to the issue of custody—that is, whether a reasonable person in the suspect's position would have considered himself deprived of his freedom of action in a significant way. *E.g., People v. Trujillo,* 785 P.2d 1290, 1293 (Colo.1990); *People v. Cleburn,* 782 P.2d 784, 786 (Colo. 1989); *People v. Thiret,* 685 P.2d 193, 203 (Colo.1984). Under the objective standard, neither the interrogating officer's subjective state of mind nor the suspect's mental state is conclusive on the issue of whether a reasonable person in that situation would have considered the interrogation to be custodial. *People v. Trujillo,* 785 P.2d at 1293; *Cleburn,* 782 P.2d at 786. Unlike a subjective test, the "reasonable person" standard is not "solely dependent either on the self-serving declarations of the police officers or the defendant nor does it place upon the police the burden of anticipating the frailties or idiosyncracies of every person whom they question." *Berkemer v. McCarty,* 468 U.S. 420, 442 n. 35, 104 S.Ct. 3138, 3151 n. 35, 82 L.Ed.2d 317 (1984) (quoting *People v. P.,* 21 N.Y.2d 1, 9–10, 286 N.Y.S.2d 225, 233 N.E.2d 255, 260 (1967)); *People v. Gennings,* 808 P.2d 839,

845 (Colo.1991). For purposes of the *Miranda* warnings, interrogation refers "not only to express questioning by a police officer, but also to any words or actions on the part of the officer that the officer 'should know are reasonably likely to elicit an incriminating response from the suspect.'" *Trujillo*, 784 P.2d at 790 (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980)).

■ The issue of custodial interrogation is essentially a factual question that requires a trial court to consider the totality of circumstances surrounding the suspect's encounter with the police, then to assess the credibility of witnesses and to weigh their testimony, and finally to apply the correct legal standard to the facts as found by the court. Our role as an appellate court is to review the record to determine whether the trial court's findings of historical fact "are adequately supported by competent evidence and whether the court applied the correct legal standard to these findings in resolving the issue before it." *Trujillo*, 784 P.2d at 792.

■ In resolving the issue of custodial interrogation, the district court considered evidence bearing on the circumstances surrounding the interrogation, including the defendant's prior confession to Worley, the fact that Worley called the police while the defendant was at the Worley home so that the police could deal with the defendant, and the conversation between Worley and Officer Abbott in the presence of the defendant prior to the interrogation itself. Based on that evidence, the court concluded that a reasonable person in the defendant's position would not have considered himself free to leave the Worley home when Officer Abbott directed the initial question to him. Furthermore, there is no question that the officer's initial question to the defendant—i.e., "What's happening here between you and Mr. Worley?"—was reasonably likely to elicit an incriminating response from the defendant. In sum, our review of the record satisfies us that the court's findings of fact are supported by competent evidence in the record and that the court applied the correct legal standard in resolving the issue of custodial interrogation.

## III.

■ We cannot say the same about the district court's suppression of the defendant's three inculpatory statements made subsequent to his initial unwarned statement to Officer Abbott. In our view, the court applied an erroneous legal standard in ruling that these three subsequent statements were the illegal products of the defendant's initial unwarned statement to Officer Abbott.

■ In *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the United States Supreme Court considered whether a law enforcement officer's initial failure to administer the *Miranda* warnings taints a suspect's subsequent admissions made after the suspect has been fully advised of and has waived his *Miranda* rights. When Elstad was arrested at his home for burglary, the arresting officer told him that he "felt" that Elstad was involved in the burglary. Elstad replied to the officer's remark by stating, "Yes, I was there." Elstad was then transported to the stationhouse where he was advised of his *Miranda* rights for the first time. He agreed to talk to the police and made a statement detailing his involvement in the burglary. The district court excluded the incriminating remark Elstad made to the officer in his home, but admitted the statement made at the stationhouse after the *Miranda* advisement. Elstad was convicted of burglary, but his conviction was reversed by the Oregon court of appeals because there was not a sufficient break in the stream of events between the initial statement obtained in violation of *Miranda* and the subsequent confession given by the defendant after the administration of the *Miranda* warnings. *State v. Elstad*, 61 Or.App. 673, 658 P.2d 552, 554–55 (1983). The United States Supreme Court reversed the judgment of the Oregon court of appeals and held that the Fifth Amendment of the United States Constitution did not require the suppression of a confession,

made after proper *Miranda* warnings and after a valid waiver of rights, solely because the police had obtained an earlier voluntary but unwarned admission from the suspect. Although the Supreme Court acknowledged that a suspect's answers to custodial interrogation in the absence of the required *Miranda* warnings must be excluded from evidence at trial in the prosecution's case in chief, it determined that there was little justification for permitting the highly probative evidence of a voluntary confession to be "irretrievably lost to the factfinder" when neither the suspect's initial incriminating statement nor his subsequent confession is coerced. 470 U.S. at 312, 105 S.Ct. at 1295. Under *Elstad,* therefore, "there is no warrant for presuming coercive effect when the suspect's initial inculpatory statement, though technically in violation of *Miranda,* was voluntary." 470 U.S. at 318, 105 S.Ct. at 1297–98 (footnote omitted). Rather, "[t]he relevant inquiry is whether, in fact, the second statement was also voluntarily made." *Id.* In addressing the scope of that inquiry, the Supreme Court stated:

> As in any such inquiry, the finder of fact must examine the surrounding circumstances and the entire course of police conduct with respect to the suspect in evaluating the voluntariness of his statements. The fact that a suspect chooses to speak after being informed of his rights is, of course, highly probative. We find that the dictates of *Miranda* and the goals of the Fifth Amendment proscription against use of compelled testimony are fully satisfied in the circumstances of this case by barring use of the unwarned statement in the case in chief. No further purpose is served by imputing "taint" to subsequent statements obtained pursuant to a voluntary and knowing waiver.

 The standard of constitutional voluntariness and the *Miranda* requirements are thus fundamental components of the *Elstad* calculus. An inculpatory statement is voluntary as long as some form of coercive police activity does not play a significant role in inducing the statement. *Colorado v. Connolly,* 479 U.S. 157, 167, 107

S.Ct. 515, 521, 93 L.Ed.2d 473 (1986); *Gennings,* 808 P.2d at 843–44. The determination of the voluntariness issue requires a court to consider the totality of circumstances surrounding the making of an inculpatory statement. *Mincey v. Arizona,* 437 U.S. 385, 401, 98 S.Ct. 2408, 2418, 57 L.Ed.2d 290 (1978); *Gennings,* 808 P.2d at 844; *People v. Raffaelli,* 647 P.2d 230, 235 (Colo.1982). In *People v. Gennings,* 808 P.2d 839, 844 (Colo.1991), we elaborated on the "totality of circumstances" for purposes of constitutional voluntariness as follows:

> The term "totality of circumstances" refers to the significant details surrounding and inhering in the interrogation under consideration. Included in any listing of such details, but by no means intended as an exhaustive cataloging, are the following: whether the defendant was in custody or was free to leave and was aware of his situation; whether *Miranda* warnings were given prior to any interrogation and whether the defendant understood and waived his *Miranda* rights; whether the defendant had the opportunity to confer with counsel or anyone else prior to the interrogation; whether the challenged statement was made during the course of an interrogation or instead was volunteered; whether any overt or implied threat or promise was directed to the defendant; the method and style employed by the interrogator in questioning the defendant and the length and place of the interrogation; and the defendant's mental and physical condition immediately prior to and during the interrogation, as well as his educational background, employment status, and prior experience with law enforcement and the criminal justice system.

 We emphasize here that *Miranda* requires more than the mere administration of the requisite warnings. Under *Miranda,* the prosecution bears the burden of establishing by a preponderance of the evidence not only that adequate warnings were administered but also that the suspect knowingly and voluntarily waived the *Miranda* rights. *Miranda,* 384 U.S. at 475,

86 S.Ct. at 1628. A valid waiver will not be presumed "simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." *Id.* We discussed the interrelationship between voluntariness, *Miranda,* and the *Elstad* rule in *People v. Mendoza–Rodriguez,* 790 P.2d 810 (Colo.1990), where we stated:

> Under *Elstad,* in order to determine the voluntariness of post-*Miranda* statements, a court must first determine whether the defendant's pre-*Miranda* statements were given voluntarily. If they were, then the post-*Miranda* statements would not be rendered involuntary.... If the pre-*Miranda* statements were not made voluntarily, however, the defendant's post-*Miranda* statements could be admitted only if they were not "tainted" by the prior involuntary statements. "When a prior statement is actually coerced, the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators all bear on whether the coercion has carried over into the second confession."

*Id.* at 814–15 (quoting *Elstad,* 470 U.S. at 310, 105 S.Ct. at 1293; other citations omitted).

▬ In the instant case, the district court failed to apply the *Elstad* standard in suppressing the defendant's statements subsequent to his initial statement to Officer Abbott, failed to make any findings on the voluntariness of the defendant's initial unwarned statement to Officer Abbott, and did not address whether the defendant validly waived his *Miranda* rights in making the three inculpatory statements after his first unwarned statement to Officer Abbott. Under *Elstad,* a finding of constitutional voluntariness with respect to the defendant's initial and subsequent inculpatory statements is fundamental to a resolution of the constitutional admissibility of those statements. In addition, the mere fact that the defendant's initial statement, taken in violation of *Miranda,* was followed by *Miranda* warnings and three inculpatory statements does not resolve the question of whether the defendant knowingly and voluntarily waived his *Miranda* rights in making the three inculpatory statements. In summary, only if the defendant's initial statement was voluntary in a constitutional sense and his subsequent statements were preceded by a valid waiver of *Miranda* rights, and were otherwise constitutionally voluntary, would the defendant's subsequent statements be admissible under *Elstad.* Because the district court failed to resolve these critical matters, further proceedings are necessary on the defendant's suppression motion.

We accordingly affirm the district court's suppression of the defendant's first statement made to Officer Abbott and reverse the court's suppression of the defendant's subsequent statements, and we remand the case to the district court for further proceedings consistent with the views herein expressed.