**PEOPLE of the State of Colorado,
Plaintiff–Appellant,**

v.

**Kelly R. THOMAS, Defendant–Appellee.**

No. 92SA121.

Supreme Court of Colorado,
En Banc.

Nov. 9, 1992.

Peter F. Michaelson, Dist. Atty., Fifth Judicial Dist., Titus D. Peterson, Deputy Dist. Atty., Breckenridge, for plaintiff-appellant.

Richard A. St. Denis, Breckenridge, for defendant-appellee.

Justice MULLARKEY delivered the Opinion of the Court.

The defendant, Kelly Thomas, was arrested after a warrantless search of his car during a routine traffic stop. He was charged with Unlawful Possession of a

Controlled Substance, Schedule II; Possession of Marihuana; Motor Vehicle Financial Responsibility Act suspension; Driving a Vehicle without Insurance; and Possession of Paraphernalia.[1] The defendant then moved to suppress the drug paraphernalia found on his person, the statements made before the discovery of drugs in the car, the drugs found there, and his post-arrest confession.

The district court granted the motion to suppress in part, and the People brought this interlocutory appeal pursuant to C.A.R. 4.1, asserting that the defendant's consent to search the car and his statements were made knowingly, intelligently and voluntarily. As a result, the People argue that the district court erred in granting the motion in part. We agree in part and disagree in part.

## I.

On July 16, 1991, the arresting officer, Carl Zellars of the Summit County Sheriff's Office, was driving northbound on Highway 9 into Frisco in Summit County, Colorado, when he observed the defendant driving a gray Chevrolet with a temporary sticker which appeared to have been altered. He pulled the defendant over to investigate, and was told that a car dealer had altered the sticker. The officer verified this statement through papers in the defendant's possession.

In addition, the officer ran a check on the defendant's license and found that it was under a financial responsibility act suspension. He then issued a warning for the altered temporary sticker and cited the defendant for no proof of insurance and for driving under suspension. He advised the defendant that he was free to go; however, the officer retained the suspended license and instructed the defendant not to drive due to the suspension.

At this time, the officer, armed and in uniform, told the defendant that he would like to ask him a couple of questions. This was due to the officer's belief that the defendant was "nervous," since he had been pacing up and down and licking his lips. The defendant consented.

First the defendant was asked if he had any illegal weapons or contraband on him, and he replied "no." Then he was asked if he understood what illegal contraband was. When he answered that he didn't, the officer proceeded to explain what it was. The defendant was then asked if he minded if the officer were to search his person or vehicle for any contraband. According to the officer, the defendant consented to the searches.

The officer directed the defendant to empty out his pockets and then asked if it was okay to pat him down. Again, the defendant consented. The officer felt an object in the defendant's left pants pocket, which proved to be a pot (*i.e.* marihuana) pipe.

The officer called for a backup to watch the defendant while the search of the car would be conducted. At this point the defendant was advised that he was not under arrest, but was being detained. The officer told the defendant that if nothing else was found on him or in the car, the defendant would just receive a ticket for possession of drug paraphernalia.

The officer testified that, at this time, the defendant was not free to go and that he was definitely going to take "enforcement action." The officer stated that the defendant then again consented to a search of his car, at which time he asked the defendant if he had any drugs in the car and was told that there was some marihuana in a backpack. The officer then told the defendant something like, "Don't lie to me because I'm going to search anyway," or "You'd better not be lying to me." The defendant then admitted that there was also some cocaine in the backpack. It was then that the officer finally advised the defendant of his *Miranda*[2] rights. The

---

**1.** §§ 18–18–105(2)(a), 18–18–106(1), 8B C.R.S. (1986), 42–7–422, 17 C.R.S. (1984), and § 42–4–1213, 17 C.R.S. (1984 & 1992 Supp.) and § 12– 22–504(1), 5A C.R.S. (1991) (repealed July 1, 1992), respectively.

**2.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

officer testified that the defendant understood those rights and consented in writing to a search of his car.

The officer then searched the vehicle and found marihuana and cocaine in a backpack. Following the discovery, the defendant agreed to write out a statement detailing what had occurred as well as the fact that the drugs were his. The statements made before the discovery of the drugs, the drugs and paraphernalia and the post-arrest statements were the subject of the motion to suppress.

In granting the defendant's motion in part, the district court found that once the defendant was free to go, he engaged in a consensual interview and consented to a pat-down of his person. As a result, the pot pipe was admissible evidence. The evidence seized during the search of his car and his incriminating statements made thereafter, however, were suppressed by the court as taken in violation of his rights under *Miranda.*

## II.

The question we address today is whether the trial court applied the correct standards in determining that the search of the defendant's car and the taking of his incriminatory statements violated the rights guaranteed to him under the Fourth and Fifth Amendments of the United States Constitution. Because we conclude that the trial court improperly analyzed the car search, we remand that issue for further findings of fact by the court. We affirm the suppression of the defendant's statements.

## A.

There are three basic categories of citizen encounters with law enforcement officials: consensual interviews or encounters, investigative stops or detentions,[3] and arrests. *People v. Anthony Trujillo,* 773 P.2d 1086, 1089 (Colo.1989). The last two categories are seizures within the scope of the Fourth Amendment. This case in-

volves all three of these categories, beginning with an investigative detention which then became a consensual encounter and ended as an arrest.

■ The statutory authority for an investigative stop is section 16–3–103(1), 8A C.R.S. (1986), which provides that, "A peace officer may stop any person who he reasonably suspects is committing, has committed or is about to commit a crime and may require him to give his name and address, identification ... and an explanation of his actions." Under this statute, the officer here had authority to stop the defendant, since he had a reasonable suspicion that the temporary sticker had been altered, which would constitute a misdemeanor traffic offense. § 42–3–122(2)(b), 17 C.R.S. (1992 Supp.). Upon investigation, he discovered that the sticker had been altered, but that the alteration had been done by the dealer.

With the information obtained during the stop, the officer had probable cause to charge the defendant with traffic code violations for driving without insurance and driving with a suspended license, and he did so, without arresting the defendant. The officer had no reasonable suspicion or probable cause to believe that the defendant was committing, had committed, or was about to commit any other crime. Therefore, after the ticket was issued, the investigative traffic stop was over. At this point, our analysis moves on to the consensual encounter.

■ A consensual encounter consists of the voluntary cooperation of an individual to the non-coercive questioning by an officer. The individual is free to leave at any time during such an encounter, and, therefore, he is not "seized" within the meaning of the Fourth Amendment. *See Anthony Trujillo,* 773 P.2d at 1089; *Terry,* 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 n. 16. The test for determining if the encounter is a consensual one is whether a reasonable person under the circumstances would believe he or she was free to leave and/or

---

**3.** These are also known as *"Terry"* or *"Stone"* stops. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971).

to disregard the official's request for information. *See INS v. Delgado*, 466 U.S. 210, 215, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984) (citing *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980)). A reasonable person in the defendant's position would have known that he was free to go because the officer so informed the defendant, and the defendant conceded that he knew this in his testimony. The officer testified that he tried to make people in this sort of situation feel "comfortable" and the defendant agreed that he did feel "comfortable" at that point in time. The defendant chose not to leave but rather acquiesced in the officer's request to respond to some questions. Therefore, the trial court was correct in finding this encounter to be entirely consensual.

■■■ From the evidence before it, the trial court agreed with the People and found, although the defendant testified to the contrary, that the defendant gave his consent to have his person searched. Findings of fact by the trial court, including the determination that consent was given and such consent was voluntary, which are supported by competent evidence in the record will not be disturbed on appeal. *People v. Hutton*, 831 P.2d 486, 488 (Colo.1992); *People v. Cummings*, 706 P.2d 766, 769 (Colo. 1985). Therefore we affirm the trial court's finding that the pot pipe was admissible, since it was discovered as a result of this consensual search.

### B.

■■ Once the pot pipe was found, however, the defendant was in custody. "A person obviously is 'in custody' when that person has been subjected to the constraints associated with a formal arrest." *People v. Julian Trujillo*, 784 P.2d 788, 791 (Colo.1990). The test is an objective one: whether a reasonable person in the suspect's position would consider himself deprived of his freedom of action in any significant way. *See People v. Hamilton*, 831 P.2d 1326, 1330 (Colo.1992); *Julian Trujillo*, 784 P.2d at 791. Here, the defendant was told that he was being detained

and, at the very least, would receive a ticket. In addition, another officer had been called and had arrived on the scene to act as backup. The officer testified that the defendant was no longer free to go.

■■ At this point in time, the officer began to interrogate the defendant. The term "interrogation" under *Miranda* refers not only to express questioning by a police officer, but also to any words or actions on the part of the officer that the officer "should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980); *see also Hamilton*, 831 P.2d at 1331; *Julian Trujillo*, 784 P.2d at 790. The determination of whether an officer's words or actions are "reasonably likely to elicit an incriminating response" turns primarily "upon the perceptions of the suspect, rather than the intent of the police." *Innis*, 446 U.S. at 301, 100 S.Ct. at 1689.

■■ The defendant should have been advised of his Fifth Amendment *Miranda* rights at this point because he was in custody and the officer proceeded to interrogate him. Whether an interrogation is custodial is determined by examining the totality of circumstances surrounding the interrogation. Although there is no exclusive list of factors to be applied in making the determination, the following have been emphasized by this court: .

[T]he time, place and purpose of the encounter; the persons present during the interrogation; the words spoken by the officer to the defendant; the officer's tone of voice and general demeanor; the length and mood of the interrogation; whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation; the officer's response to any questions asked by the defendant; whether directions were given to the defendant during the interrogation; and the defendant's verbal or nonverbal response to such directions.

*People v. Thiret*, 685 P.2d 193, 203 (Colo. 1984); *Julian Trujillo*, 784 P.2d at 791.

In *Miranda,* the United States Supreme Court held that prior to any custodial interrogation a suspect must be adequately informed that he has a right to remain silent, that anything he does say can be used in court, that he has a right to the presence of an attorney, and that if he cannot afford an attorney, one will be appointed for him prior to questioning if he so desires. *Miranda,* 384 U.S. at 479, 86 S.Ct. at 1630. *See also California v. Prysock,* 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981); *Hamilton,* 831 P.2d at 1330; *Julian Trujillo,* 784 P.2d at 790. These warnings should have been given to the defendant.

■ In this situation, the district court found both that there was custodial interrogation in violation of the defendant's constitutional rights and that the statements were involuntary. The voluntariness of the statements is assessed in light of whether there were "deliberately coercive or improper tactics" used by the officer in eliciting the self-incriminating statements from the defendant.[4] *Oregon v. Elstad,* 470 U.S. 298, 314, 105 S.Ct. 1285, 1296, 84 L.Ed.2d 222 (1985). In this situation, the court expressly noted in its ruling that there was coercion in the officer's statement to the defendant that he was being detained but if nothing else was found, he would be released. The officer told the defendant that the possession of the pipe was illegal and that, at the very least, he would be given a ticket for such possession. The court also found that the officer's questioning as to the defendant's possession of drugs rose to the level of a threat with the officer's statement, "You'd better not be lying to me." Taking all of these factors into consideration, the trial court properly found that the statements given by the defendant were not made voluntarily, but in response to the coercive conduct of the officer. In addition, the officer's words and actions were designed to elicit incriminating statements and, since the defendant was in custody at the time, constituted a custodial interrogation which

violated *Miranda.* Accordingly, the defendant's statements were properly suppressed.

The prosecution attempts to distinguish between the defendant's statement as to the whereabouts of the marihuana and the defendant's statement as to the cocaine. The distinction is made because the officer's remark about lying intervened between the defendant's two statements. Until the officer made his remark, the prosecution argues that the situation was a non-custodial investigative stop, but that after the statement was made, the situation became custodial. The district attorney concedes, therefore, that the defendant's statement about the cocaine should be suppressed, but argues that the statement about the marihuana is admissible.

This argument is based on a misunderstanding of the definition of custody and its application to the present facts. Custody, per se, encompasses more than formal arrest situations. The essential element of custody is that a reasonable person in the suspect's position would feel that he is not free to leave and, by that standard, the defendant was clearly in custody when both statements were made. The officer's remark about lying is not the sole factor in determining whether custody existed, although it is persuasive. In examining the totality of the circumstances, the district court correctly found that there was both custody and interrogation, and, therefore, it properly suppressed the statement about the marihuana as well as the statement about the cocaine.

### C.

■ As discussed above, the defendant received *Miranda* warnings after he made his two statements about the drugs. His written consent to search the car and his written confession were made subsequent to those warnings and the drugs were found in the backpack as a result of his consent to the car search. The question

---

**4.** If statements are made while in custody, such statements will be suppressed if *Miranda* warnings have not been given, whether or not they are voluntarily made. The voluntariness of the

pre-*Miranda* statements, however, is fundamental to the analysis of the admissibility of the post-*Miranda* statements, as discussed below in section D.

now is whether the drugs and the confession were properly suppressed by the trial court. We first address the written confession.

The appropriate analysis to be applied to the written confession is set forth in *People v. Mendoza–Rodriguez*, 790 P.2d 810 (Colo.1990), in which we adopted the reasoning of the United States Supreme Court in *Elstad*, 470 U.S. 298, 105 S.Ct. 1285, and stated:

> Under *Elstad*, in order to determine the voluntariness of post-*Miranda* statements, a court must first determine whether the defendant's pre-*Miranda* statements were given voluntarily. If they were, then the post-*Miranda* statements would not be rendered involuntary.... If the pre-*Miranda* statements were not made voluntarily, however, the defendant's post-*Miranda* statements could be admitted only if they were not "tainted" by the prior involuntary statements.

*Mendoza–Rodriguez*, 790 P.2d at 814–15; *see also Hamilton*, 831 P.2d at 1333.

Here, the defendant argues that the written confession was tainted by the prior involuntary statements taken during the illegal custodial interrogation. As discussed above, we agree with the trial court that the prior statements were involuntary because of the improper and coercive conduct of the officer. Therefore, in order to prevail in its attempts to have the suppression order overturned, the prosecution must "establish that the challenged evidence was obtained from an independent source, or that the connection between the initial illegality and the evidence has become so attenuated as to dissipate the initial taint." *People v. Lee*, 630 P.2d 583, 590–91 (Colo.1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1036, 71 L.Ed.2d 318 (1982); *see also Hamilton*, 831 P.2d at 1333; *Harrison v. United States*, 392 U.S. 219, 225–26, 88 S.Ct. 2008, 2011–12, 20 L.Ed.2d 1047 (1968). If the People cannot meet this burden, the evidence must be suppressed.

Under *Elstad* and *Mendoza–Rodriguez*, the allegedly illegal taint may be purged by demonstrating the voluntariness of the written confession. The prosecution has the burden of establishing the voluntariness of the defendant's statement by a preponderance of the evidence. *Mendoza–Rodriguez*, 790 P.2d at 816. In assessing the voluntariness of the confession, the examining court must decide whether it was "sufficiently an act of free will to purge the primary taint" of the illegality. *Wong Sun v. United States*, 371 U.S. 471, 486, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). This assessment is made in light of the totality of the circumstances. *Mendoza–Rodriguez*, 790 P.2d at 816. "The term 'totality of circumstances' refers to the significant details surrounding and inhering in the interrogation under consideration." *People v. Hutton*, 831 P.2d 486, 488 (Colo.1992) (quoting *People v. Gennings*, 808 P.2d 839, 844 (Colo.1991)). This court has set forth several factors which should be considered in assessing voluntariness:

> Included in any listing of such details, but by no means intended as an exhaustive cataloging, are the following: whether the defendant was in custody or was free to leave and was aware of his situation; whether *Miranda* warnings were given prior to any interrogation and whether the defendant understood and waived his *Miranda* rights; whether the defendant had the opportunity to confer with counsel or anyone else prior to the interrogation; whether the challenged statement was made during the course of an interrogation or instead was volunteered; whether any overt or implied threat or promise was directed to the defendant; the method and style employed by the interrogator in questioning the defendant and the length and place of the interrogation; and the defendant's mental and physical condition immediately prior to and during the interrogation, as well as his educational background, employment status, and prior experience with law enforcement and the criminal justice system.

*Hutton*, 831 P.2d at 488 (quoting *Gennings*, 808 P.2d at 844).

The United States Supreme Court in *Elstad* focused on three particular factors as

being helpful, noting that: "When a prior statement is actually coerced, the time that passes between confessions, the change in place of interrogations and the change in identity of the interrogators all bear on whether that coercion has carried over into the second confession." *Elstad,* 470 U.S. at 310, 105 S.Ct. at 1293; *see also Mendoza–Rodriguez,* 790 P.2d at 815.

In the present case, the record reflects that there was no break in time between the violation of the defendant's constitutional rights—the imposition of custodial interrogation after the pat-down—and the written confession. The process took over one half-hour and the officer and defendant were in contact during the entire time. There was no change in either the place of interrogation or the persons involved in the interrogation. In addition, the district court found that there was official misconduct. The officer testified that he had no probable cause to search the defendant or his car, and the court found that his coercive and threatening questions were designed to elicit incriminating statements.

As to intervening circumstances, it is undisputed that the officer advised the defendant of his rights under *Miranda* before the consent to search form was signed and the confession written. However, *Miranda* warnings per se do not break the causal connection between the illegality and the evidence obtained subsequent to the illegality. *People v. Jones,* 828 P.2d 797, 800 (Colo.1992); *see also Dunaway v. New York,* 442 U.S. 200, 216–17, 99 S.Ct. 2248, 2258–59, 60 L.Ed.2d 824 (1979); *Brown v. Illinois,* 422 U.S. 590, 603, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975). As the United States Supreme Court noted in *Brown:*

> If *Miranda* warnings, by themselves, were held to attenuate the taint of an unconstitutional arrest, regardless of how wanton and purposeful the Fourth Amendment violation, the effect of the exclusionary rule would be substantially diluted. See *Davis v. Mississippi,* 394 U.S. 721, 726–27 [89 S.Ct. 1394, 1397–98, 22 L.Ed.2d 676] (1969). Arrests made without warrant or without probable cause, for questioning or "investigation,"
> would be encouraged by the knowledge that evidence derived therefrom could well be made admissible at trial by the simple expedient of giving *Miranda* warnings. Any incentive to avoid Fourth Amendment violations would be eviscerated by making the warnings, in effect, a "cure-all," and the constitutional guarantee against unlawful searches and seizures could be said to be reduced to "a form of words."

*Brown,* 422 U.S. at 602–03, 95 S.Ct. at 2261 [citation omitted]. Although this language was written in the context of a Fourth Amendment violation, the concerns expressed therein are equally relevant to a Fifth Amendment violation. The "simple expedient of giving *Miranda* warnings" is not a "cure-all" and while the fact that *Miranda* warnings were given is relevant, it is not dispositive.

Thus, in assessing the totality of the circumstances, the trial court found that the defendant's confession was not voluntary because he did not make a knowing and intelligent waiver of his constitutional rights against self-incrimination. We agree that the written confession was a fruit of the illegal custodial interrogation. *See Wong Sun,* 371 U.S. 471, 83 S.Ct. 407; *Harrison,* 392 U.S. 219, 88 S.Ct. 2008. As such, it was correctly suppressed by the trial court.

### D.

The written consent to search the car suffers from a similar constitutional infirmity as the written confession, based on a Fourth Amendment analysis of voluntariness which utilizes the same totality of the circumstances test. The trial court suppressed the fruits of the search because of this constitutional infirmity; however, it failed to consider the defendant's earlier, oral consent to search his car in making its findings of fact. The officer testified that the defendant's consent to search the car was given at the same time and in the same manner as the defendant's consent to a search of his person, which the trial court found to be valid. The defendant testified,

however, that he did not consent to a search of the car until after the officer found the pot pipe and he was in custody. If that is true, the consent would be involuntary and the fruits of the search inadmissible. On remand, the trial court must weigh this conflicting evidence on the record and find whether the defendant orally consented to the car search as alleged by the officer.

 If the trial court finds that the defendant gave an initial, valid consent to search the car, then the drugs found in the car may be admissible. A consent to search is not terminated by a mere worsening in the defendant's position. *See* W. LaFave, *Search and Seizure* § 8.1(c) (2d ed. 1987). Therefore, the fact that the subsequent oral and written consents to search were found to be involuntary would not necessarily vitiate the validity of the initial consent. In addition, from the facts before us, it does not seem that the defendant made any attempt to withdraw his initial consent to search the car after custody was imposed. *Cf. People v. Kennard,* 175 Colo. 479, 481, 488 P.2d 563, 564 (1971) (rejecting defendant's attempt to withdraw consent to car search after search had begun). Thus the custodial interrogation of the defendant subsequent to his oral consent to search the car would not operate to invalidate the consent, and the search of the car would be consensual. If supported by the facts, this consent would present an independent source for finding the drugs aside from the Fourth Amendment violation.[5] *See Anthony Trujillo,* 773 P.2d at 1091.

In summary, we hold that the trial court must make further findings of fact as to whether an initial consent to search the car was given by the defendant before the pat-down search, and whether that consent was valid. If so, the drugs found by the officer during the consensual search of the car would be admissible into evidence. The statements as to the drugs and the written confession, however, were properly suppressed by the district court.

The district court's ruling is affirmed in part, reversed in part, and the case is remanded for further proceedings consistent with this opinion.

---

5. The prosecution does not argue, and thus we do not address, the automobile exception to the warrant clause under *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), as an independent source for finding the drugs.