JUSTICE HOOD, dissenting.
¶47 The majority makes fair points about Cline not having been subjected to coercive incommunicado interrogation, one of the principal concerns animating Miranda doctrine. Maj. op. ¶ 21 (citing People v. Figueroa-Ortega , 2012 CO 51, ¶ 7, 283 P.3d 691, 693 ). There was certainly no third degree at the station house here. Instead, the interrogation took place in broad daylight in a parking lot, without law enforcement using restraints or weapons.
¶48 But station house browbeating isn't the only form of governmental coercion that Miranda seeks to stamp out. We see as much in cases like People v. Polander , where police detained the defendant and then confronted her with direct evidence of her guilt. 41 P.3d 698, 701 (Colo. 2001). Just as here, that evidence was obtained by an officer in whose presence an ongoing narcotics offense was occurring. Id. And, again, just as here, the combination of detention and confrontation (with the proverbial smoking gun) curtailed Polander's freedom of action to a degree associated with formal arrest-and thus amounted to custody under Miranda -even though police interrogated Polander in the parking lot of a fast-food restaurant without using restraints or weapons. See id. at 701, 705. Because I am unpersuaded by the majority's effort to distinguish Cline's case from Polander's, I respectfully dissent.
¶49 The majority perceives several "significant" distinctions between this case and Polander . Maj. op. ¶ 43. I address each in turn.
¶50 First , the majority notes that Polander was ordered to exit a van and then patted down and, unlike Polander (who was sitting in a van in which narcotics activity had been observed), police did not contact Cline based on suspicion of any criminal activity. Maj. op. ¶¶ 43-44; Polander , 41 P.3d at 701. Rather, law enforcement's contact with Cline simply resulted from Cline's agreement to random searches as a condition of his parole. But as the majority later notes, Cline was patted down for weapons after being ordered to exit *1243 his home. Maj. op. ¶ 44. And presumably the reason that Cline was subject to random searches was to permit his parole officer to verify that Cline was not engaging in criminal activity. In other words, like Polander, Cline was the target of law enforcement suspicion. See Polander , 41 P.3d at 701.
¶51 Second , the majority emphasizes that, unlike Polander (whom police ordered to sit next to a handcuffed companion), police permitted Cline to move about the parking area in front of his residence. Maj. op. ¶ 44; Polander , 41 P.3d at 701. While that is true, it is also true that Cline's parole officer told him to wait outside his home. Thus, like Polander, Cline was detained. See Polander , 41 P.3d at 701. The limitation on Cline's interaction with his neighbor confirms as much. Yet, the majority only acknowledges that Cline "was arguably detained." Maj. op. ¶ 38 (emphasis added).
¶52 The majority's reluctance to concede that Cline was not free to leave is particularly confounding, given that the trial court made that factual finding with ample record support. Admittedly, custody under Miranda is a narrower inquiry than seizure under the Fourth Amendment, and those two concepts shouldn't be confused. See People v. Begay , 2014 CO 41, ¶¶ 15-16, 325 P.3d 1026, 1030 ("A trial court errs by applying the 'free to leave' standard in evaluating whether a suspect is in custody under Miranda doctrine."). Nevertheless, People v. Matheny lists factors that courts should consider in determining whether a defendant's freedom of movement has been curtailed to a degree associated with formal arrest, one of which is whether there was "any limitation of movement ... placed on the defendant during the interrogation." 46 P.3d 453, 465 (Colo. 2002). So, whether a defendant is free to leave is a fact courts should consider in evaluating custody. Because these concepts overlap, one way to think about the inquiry is as follows: Not being free to leave is factually necessary, but legally insufficient for a finding of custody.
¶53 This distinction is crucial under our standard of review. We review de novo a trial court's legal conclusion regarding custody. But we defer to a trial court's factual findings, regarding things such as whether a defendant's movement was limited, "so long 'as they are supported by competent evidence in the record.' " Maj. op. ¶ 13 (quoting People v. Threlkel, 2019 CO 18, ¶ 15, 438 P.3d 722 ). Here, the trial court found that Cline was "certainly not free to leave" and "[h]ad he moved quickly in any direction his liberty would have been immediately curtailed by one of the [three] officers standing by." As noted above, the record clearly supports these inferences. Therefore, we are bound by the trial court's findings regarding the limitations on the defendant's movements.[1]
¶54 Third , the majority contends that, unlike Polander (who had drugs in her purse), "it was not 'apparent to all' that Cline was going to be arrested for the contents of the zippered pouch."Id. at ¶ 44 (citing People v. Stephenson , 159 P.3d 617, 623 (Colo. 2007) ); Polander , 41 P.3d at 705. But, like Polander's purse, Cline's pouch contained contraband, the knowing possession of which constitutes a felony. See § 18-18-204, C.R.S. (2018) (listing methamphetamine as a schedule II substance); § 18-18-403.5, C.R.S. (2018) (making possession of a schedule II controlled substance a "level 4 drug felony"); Polander , 41 P.3d at 701. Exposing such seized contraband to a seized defendant would not cause any reasonable person in the defendant's position to anticipate anything other than cuffs and a trip to jail. We recognized as much in Polander , see 41 P.3d at 705, and Polander should control here.
¶55 While the duration of Cline's detention didn't ipso facto transform his seizure under the Fourth Amendment into custody under the Fifth Amendment, the majority points to no cases in which detention of this length coupled with confrontation of this sort is deemed anything less than custody. On the contrary, in People v. Null , we relied on *1244 Polander in finding that the defendant's "relatively lengthy" fifteen-minute detention, which preceded the disclosure of a highly inculpatory preliminary breath test result, was enough to trigger custody for Miranda purposes. 233 P.3d 670, 677 (Colo. 2010). A ninety-minute detention preceding disclosure of a highly inculpatory pouch should fare no differently.
¶56 Although the majority finds Figueroa-Ortega instructive, maj. op. ¶¶ 34-37, that decision isn't helpful here. After all, as the majority concedes, Figueroa-Ortega had not even been detained. Id. at ¶ 38; Figueroa-Ortega , ¶ 4, 283 P.3d at 692. Moreover, as the majority also concedes, Figueroa-Ortega had not been confronted with direct evidence of his guilt. Maj. op. ¶ 38; Figueroa-Ortega , ¶ 4, 283 P.3d at 692. Here, and in Polander , the officer confronted the defendant about an ongoing crime that was being committed in the officer's presence. See 41 P.3d at 701. Such was not the case in Figueroa-Ortega . See Figueroa-Ortega , ¶¶ 3-5, 283 P.3d at 692.
¶57 Under our precedent, when law enforcement officers detain a defendant for an hour and a half and then confront him with direct evidence of his guilt of an ongoing crime, they have curtailed the defendant's freedom of action to a degree associated with formal arrest. I would affirm the trial court's order suppressing Cline's statement about the last time he used methamphetamine.
I am authorized to state that CHIEF JUSTICE COATS and JUSTICE HART join in this dissent.

Unlike the majority, I do not believe that the trial court simply conflated the standards for seizure and custody. Maj. op. ¶¶ 19, 20 n.4. Instead, I believe that the record shows how the trial court made a factual finding about the defendant not being free to leave in support of its legal conclusion that the defendant had been restrained to a degree commensurate with formal arrest.